UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CANADIAN NATIONAL RAILWAY COMPANY AND WATERLOO RAILWAY COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CV-10-452-B-W |
| MONTREAL, MAINE & ATLANTIC RAILWAY, INC. | ) ) ) ) | |
| Defendant. | ) | |

### AMENED[1] ORDER ON MOTION TO INTERVENE

In a dispute between two railroad companies over the terms of a recorded easement on train tracks to service a paper mill, the mill owner moved to intervene as of right under Rule 24(a) and by permission under Rule 24(b). The Court concludes that intervention is warranted under each.

## I.  STATEMENT OF FACTS

### A.  Procedural History

On October 29, 2010, Canadian National Railway Company and its wholly owned subsidiary, Waterloo Railway Company (collectively Canadian National), filed a complaint in Aroostook County Superior Court, state of Maine, against Montreal, Maine & Atlantic Railway, Inc. (MMA), alleging that MMA is breaching a recorded easement over a portion of its railroad tracks (the Subject Trackage) that

---

[1] This Amended Order corrects typographical errors contained in the Order on Motion to Intervene (Docket # 50) dated 11/17/2010. In the next to the last paragraph on pages 9, 11 and 12, the Order currently reads *Amco Oil Co. v. Dingwell*, but should read *Amoco Oil Co. v. Dingwell*.

allowed Canadian National to serve the Twin Rivers paper mill in Madawaska, Maine. *Notice of Removal* at Attach. 1 ¶¶ 9, 10 (Docket # 1) (*Compl.*). On the same day, Twin Rivers Paper Company, LLC (Twin Rivers), owner of the Twin Rivers paper mill, moved to intervene. *Id.* at Attach. 11.

When MMA removed this case to federal court on November 11, 2010, Twin Rivers filed a motion to intervene with this Court the same day. *Mot. to Intervene* (Docket # 5) (*TR Mot.*). MMA filed its opposition to Twin Rivers' motion on November 11, 2010. *Opp'n to Twin Rivers Paper Company, LLC's Mot. to Intervene* (Docket # 34) (*Def.'s Opp'n*). Twin Rivers replied on November 12, 2010. *Reply to Def.'s Opp'n to Twin Rivers Paper Company, LLC's Mot. to Intervene* (Docket # 36) (*TR Reply*).

B.   **Relevant Facts**

The Twin Rivers paper mill—then the Fraser Paper Mill—opened in 1925 in Madawaska, Maine. *TR Mot.* at 2. Currently, it directly employs approximately 1300 people and it says that the jobs of more than 3000 other people are linked indirectly to the mill. *Id.* at 4. The mill receives and ships goods by truck and rail. *TR Mot.* at 2. MMA owns all the railroad tracks adjacent to and extending into the mill on Twin Rivers' property and, accordingly, is the only rail carrier able to directly reach Twin Rivers' mill. *Def.'s Opp'n* at 2. MMA also owns a switching and sorting yard adjacent to the mill, and further performs switching operations inside the mill 5 or 6 times per week. *Id.*

Dissatisfied with MMA service, Twin Rivers negotiated an agreement with Canadian National providing that Canadian National would service the Twin

Rivers mill by exercising its rights to an easement over MMA's tracks. *TR Mot.* at 3. Twin Rivers claims that this agreement will reduce freight costs, transit time and working capital requirements, and will result in more on-time deliveries. *Id.* at 3. Conversely, if Canadian National cannot perform under the agreement, Twin Rivers claims it would lose "a critical measure of transportation security for the Madawaska Mill" and would suffer "substantial and irreparable harm" including closing of the mill. *Id.* at 3-4.

Further, Twin Rivers claims that harm would also be felt by the Edmundston mill, which is located over the Saint John River, across from the Twin Rivers mill. *Id.* at 4. According to Twin Rivers, although Canadian National does not travel over the Subject Trackage to reach the Edmundston mill, because it and the Twin Rivers mill are so "interdependent," if the Twin Rivers mill closed, the Edmundston mill would be forced to follow suit. *Id.*

### C. Twin Rivers' Argument

Twin Rivers seeks intervention both as of right under Rule 24(a) and by permission under Rule 24(b). FED. R. CIV. P. 24; *TR Mot.* at 5, 8. Turning first to intervention as of right, Twin Rivers emphasizes its interest in the pending litigation. According to Twin Rivers, "the entire dispute between the parties is over the right to serve the Twin Rivers Mill." *Id.* at 6. Twin Rivers argues that its interest is demonstrated by the severe economic damage it faces and the thousands of jobs at risk if Canadian National does not prevail. *Id.*

Twin Rivers next claims that intervention as of right is warranted because its interests are not identical to Canadian National's, and it would not be adequately

3

protected by Canadian National's representation. To this point, Twin Rivers asserts that Canadian National's interest is limited to "protection of its real property rights, as set forth in a recorded Easement Deed." *Id.* at 7. In contrast, Twin Rivers characterizes its interest as "the economic prospects, and the continued existence of, the Twin Rivers' Mill and the company dependant on the revenue generated from that mill." *Id.* Twin Rivers reasons by extension that its interest further includes the "substantial economic ripple effect for the surrounding region." *Id.*

Twin Rivers' final point as to intervention by right is that, because "[t]his litigation is in its infancy [and] Twin Rivers is filing [its] motion simultaneously with Canadian National's filing of its Complaint," intervention will not prejudice any of the named parties. *Id.* at 8.

Turning to permissive intervention, Twin Rivers asserts that, having proved its point as to intervention by right, it also meets the permissive intervention standards. *Id.* at 8-9.

### D. MMA's Opposition

MMA argues that Twin Rivers is "entitled to neither intervention as of right nor permissive intervention." *Def.'s Opp'n* at 4. As to Twin Rivers' motion to intervene as of right, MMA focuses on Twin Rivers' lack of a "*legal* connection to the parties or to their disputed trackage rights." *Id.* (emphasis in original). In MMA's eyes, Twin Rivers' connection to the proceedings is, at best, financial—an interest insufficient to allow intervention by right. *Id.*

4

MMA cites case law, emphasizing a First Circuit directive that the intervening party must have "legal rights affected by the disputed law or regulation." *Id.* at 4-5 (citing *Daggett v. Comm'n on Governmental Ethics and Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999)). MMA argues by analogy that Twin Rivers' position is no more tied to the litigation than would be a buyer of a product from a manufacturer violating another's patent: "the buyers would undoubtedly prefer to have access to the infringer's chips . . . [but t]hey have no 'right' to purchase those infringing goods or to argue against the infringement. They are strangers to the disputed intellectual property rights." *Id.* at 6.

Pressing the point, MMA argues that Twin Rivers' economic interest could be adequately represented by Canadian National because "[t]he two companies have exactly the same goal; they are both trying to give [Canadian National] physical access over MMA tracks so that [Canadian National] may provide direct service to the mill." *Id.* at 8.

Turning to permissive intervention, MMA argues first that Twin Rives has no claims or defenses that it could assert:

> "it has no contract with MMA concerning the [temporary restraining order], [Interstate Commerce Commission Termination Act], or [Canadian National]. It has no claim against MMA concerning trackage rights. MMA has violated no legal duty owed [Twin Rivers].

*Id.* at 9. MMA reasons that Twin Rivers "should be limited to contributing affidavits, at most." *Id.* at 10.

Finally, MMA argues that, in any event, the Court should deny intervention because Twin Rivers' inclusion "would almost certainly impede progress and diffuse

5

the focus in the case." *Id.* MMA characterizes Twin Rivers' briefing as "cumulative," and its arguments as "unsubstantiated," and concludes that responding to the additional briefs "would cost MMA time and money" and "[t]he Court would be inundated with unnecessary briefing and distracted from the dispute with [Canadian National]." *Id.*

### E. Twin Rivers' Reply

In its reply, Twin Rivers attacks MMA's assertion that an economic interest, alone, is insufficient to allow intervention by right, and cites First Circuit case law holding that "[p]otential economic harm to a would-be intervenor is a factor that warrants serious consideration in the interest inquiry." *TR Reply* at 2-3 (quoting *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998)). Twin Rivers goes on to argue the strength of its connection to the dispute as evidenced by statements MMA's predecessor made at its bankruptcy hearing, and the language of the agreements themselves, which provide that "[Canadian National] shall have the right to enter and exit the Subject Trackage . . . for the receipt of delivery of local traffic from and to the Fraser/Nexfor facility located in Madawaska, ME." *Id.* at 3-5.

As to the adequacy of Canadian National's representation, Twin Rivers stresses that, while the desired outcomes are shared, the "goals and interests are distinct." *Id.* at 5. Twin Rivers points to differences "in kind or degree" between its interests and those of Canadian National:

> [Canadian National] has an interest in continuing to serve one of its customers. Twin Rivers, on the other hand, has an interest in

6

maintaining a competitive option for rail service to protect its very survival as a company.

*Id.* at 6.

Lastly, as to permissive intervention, Twin Rivers reiterates that the "litigation is in its infancy," and emphasizes that its presence "may be helpful in fully developing the case." *Id.* at 7.

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 24

Twin Rivers seeks intervention under both Rule 24(a), allowing intervention as of right,[2] and Rule 24(b), allowing intervention by permission. *See* FED. R. CIV. P. 24. District courts have substantial discretion to grant intervention under either subsection (a) or (b). *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009); *Caterino v. Barry*, 922 F.2d 37, 39 (1st Cir. 1990); *Int'l Paper Co. v. Inhabitants of Jay*, 887 F.2d 338, 344 (1st Cir. 1989).

### B. Intervention by Right – Rule 24(a)

Rule 24(a) provides:

On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

[2] As Twin Rivers points to no federal statute granting it an unconditional right to intervene, *see* FED. R. CIV. P. 24(a)(1), the Court assumes that Twin Rivers asserts intervention by right under Rule 24(a)(2). *See Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989) ("Rule 24(a)(1) is narrowly construed; private parties are rarely given an unconditional right to intervene.").

7

An applicant seeking admission by right must satisfy four requirements:

1. The application for admission must be timely;

2. The applicant must possess "a direct and substantial interest in the subject matter of the litigation";

3. The applicant's position must be such that "disposition of the action may as a practical matter impair or impede its ability to protect [its] interest"; and

4. The applicant's interest cannot be adequately represented by existing parties to the litigation.

*Caterino*, 922 F.2d at 39-40. In reviewing such a request, district courts "should utilize a holistic approach, read the requirements together, and weigh the factors with a commonsense view of the overall litigation." *Walgreen Co. v. Feliciano de Melecio*, 194 F.R.D. 23, 25 (D.P.R. 2000), *aff'd*, No. 00-2012, 2001 WL 355531 (1st Cir. March 28, 2001) (citing *Pub. Serv. Co.*, 136 F.3d at 204 (internal quotation marks omitted)). The analysis requires flexibility "in light of the great variety of factual circumstances in which intervention motions must be decided, [and] the necessity of having the feel of the case in deciding these motions." *Int'l Paper Co.*, 887 F.2d at 344 (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984)) (internal quotation marks omitted). The First Circuit has quoted with approval the Second Circuit's observation that:

> The various components of the Rule are not bright lines, but ranges—not all 'interests' are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate. . . . Application of the Rule requires that its components be read not discretely, but together. . . . Finally, although the Rule does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action.

*Id.* (quoting *Hooker Chems. & Plastics Corp,* 749 F.2d at 983).

1. **First Factor**

MMA raises no dispute as to the timeliness of Twin River's motion, nor could it. Canadian National filed its complaint in state court on October 29, 2010. On the same day, Twin Rivers moved to intervene. Twin Rivers similarly filed its motion to intervene with this Court on the same day that MMA removed the case from state to federal court. *See Caterino*, 922 F.2d at 39-40 ("The timeliness requirement 'is of first importance' . . . ." (quoting *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 143 (1st Cir. 1982))); *Harvey v. Veneman*, 222 F.R.D. 213, 214 (D. Me. 2004) ("If the motion was not timely, there is no need for the court to address the other factors that enter into an intervention analysis." (quoting *Associated Builders & Contractors, Inc. v. Herman,* 166 F.3d 1248, 1257 (D.D.C. 1999))).

2. **Second and Third Factors**

The Court considers the second and third factors together, "since the magnitude or extent of an intervenor's interest will be in part a function of how much the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." *Amoco Oil Co. v. Dingwell*, 690 F. Supp. 78, 81 (D. Me. 1988) (internal quotation marks and brackets omitted) (quoting *Fed. Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1492 (11th Cir. 1987)); *accord Daggett*, 172 F.3d at 110.

As regards these factors, the First Circuit has eschewed the liberal approach of the Second, Sixth, Tenth and D.C. Circuits, which view the "interest test as a practical guide to disposing of lawsuits by involving as many apparently concerned

9

persons as is compatible with efficiency and due process" and the restrictive approach of the Fifth, Seventh, Eleventh and Federal Circuits, which "reject interests that are speculative, indirect, or contingent." *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41-42 (1st Cir. 1992). Rather, the First Circuit has emphasized a fact-sensitive analysis that acknowledges "[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene under Rule 24(a)(2)" yet requires that "the intervener's claim . . . bear a 'sufficiently close relationship' to the dispute between the original litigants." *Id.* at 42; *Travelers Indem. Co.*, 884 F.2d at 638. Accordingly, "[a]n 'undifferentiated, generalized interest' in the outcome of the case at hand is not . . . sufficient to meet the standards of Rule 24(a)(2)." *Walgreen*, 194 F.R.D. at 26 (quoting *Pub. Serv. Co.*, 136 F.3d at 205).

Although, consistent with fact-sensitive considerations, the First Circuit has held that "[p]otential economic harm to a would-be intervenor is a factor that warrants serious consideration in the interest inquiry," *Pub. Serv. Co.*, 136 F.3d at 205, MMA asserts that such an economic interest, *alone*, is insufficient to justify intervention. According to MMA, the First Circuit has held that the putative intervenor must possess "a protectable legal interest." *Def.'s Opp'n* at 4. In support, MMA cites *Daggett v. Commission on Governmental Ethics and Election Practices* for the proposition that the intervening party must have some "*legal* rights affected by the disputed law or regulation." *Def.'s Opp'n* at 4 (citing 172 F.3d 104) (emphasis in original). In *Daggett*, the First Circuit found that the potential political

10

candidates whose election campaigns would receive public funding under the Maine Clean Election Act had a sufficient interest to intervene in a suit challenging the law. *Daggett*, 172 F.3d at 110. MMA views *Daggett* as holding that "while not requiring a full ownership interest, the [First Circuit] did premise its grant of intervention on the presence of the intervenors' own specific rights." *Def.'s Opp'n* at 5. That much of *Daggett* is correct.

But the Court does not read *Daggett* so narrowly to bar intervention status for an entity like Twin Rivers, whose economic destiny is—at least arguably—directly tied to the outcome of this case. The First Circuit's reasoning included the observation that:

> it is enough that the applicants belong to a small group, quite distinct from the ordinary run of citizens, who could expect to receive direct payments for their campaigns if the Reform Act is upheld but not otherwise.

*Daggett*, 172 F.3d at 110. Read in concert with *Public Service Co. of New Hampshire v. Patch's* statement that potential economic harm is a strong factor, and *Amoco Oil Co. v. Dingwell's* consideration of the "magnitude or extent of an intervenor's interest," *Daggett* allows intervention where a small, clearly defined group holds a significant economic interest in the pending litigation. The Court is persuaded that Twin Rivers meets this classification. Twin Rivers comprises the entire group directly affected by the pending lawsuit: MMA acknowledges that it is the only railroad to directly serve Twin Rivers; and the contracts at issue refer to Twin Rivers as the sole affected non-party. Furthermore, the Court concludes that Twin Rivers' financial stake in the outcome of this litigation is significant.

11

Moreover, Twin Rivers' interest is not limited to its financial interest. While MMA observed correctly that Twin Rivers remains "a stranger to the underlying agreements," *Def.'s Opp'n* at 1, MMA's subsequent assertions that Twin Rivers "is not a railroad," does not own any of the locomotives, cars, or equipment at issue," "does not own the track leading up to its building," and "has no operational rights over the track" understates Twin River' interest. *See id.* at 4. A subset of the Subject Trackage to which Canadian National seeks access and on which it seeks to perform switching operations, is located on Twin Rivers' property and inside its mill, and Twin Rivers' own track physically connects to this portion of the Subject Trackage. Even those portions of the Subject Trackage not physically connected to the mill are deeply intertwined with the Twin Rivers facility. As noted by MMA, it "has long been the only rail carrier with the ability to directly reach and serve the [Twin Rivers] facility," owns a switching and sorting yard adjacent to the mill and "the only set of tracks that run next to and physically connect to the mill," and "performs switching activities within the [Twin Rivers] facility 5 or 6 times a week." *Id.* at 2. Twin Rivers' interest extends well beyond the "practical [economic] harm that may result from disposition of the main action." *See Amoco Oil*, 690 F. Supp. at 83.

Twin Rivers' interest in the Subject Trackage is different in kind from that of Canadian National, which claims a property right in the track itself. This difference is not fatal. A Rule 24 interest "does not have to be of a legal nature identical to that of claims asserted in the main action. All that is required is an

interest in the property at issue." *In re Lopez-Soto*, 764 F.2d 23, 27 (1st Cir. 1985) (quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970)) (internal quotation marks and ellipsis omitted). Given that a portion of the Subject Trackage is located in Twin Rivers' facility, that the Subject Trackage connects to Twin Rivers' own track, and that the switching operations that Canadian National wishes to perform would occur inside the mill, this Court finds that Twin Rivers has a clear interest in the property at issue—one that would be severely and unfairly impacted were this case resolved without Twin Rivers' participation.

### 3. Fourth Factor

As to the fourth factor, a putative intervenor generally "need only make a 'minimal' showing that the representation afforded by a named party would prove inadequate." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006). Echoing its directives as to the second and third factors, the First Circuit has "stressed the case-specific nature" of the analysis and has "discouraged district courts from identifying only a limited number of 'cubbyholes' for inadequate representation claims." *Id.* at 546; *accord Mass. Food Ass'n v. Mass. Alcohol Beverages Control Comm'n,* 197 F.3d 560, 567 n. 5 (1st Cir. 1999).

Where the ultimate objectives of the putative intervenor and a named party are identical, there exists a "rebuttable presumption of adequate representation." *B. Fernandez & Hnos., Inc.*, 440 F.3d at 546; *accord United Nuclear Corp.*, 696 F.2d at 144. This presumption creates a low hurdle, however; requiring only "an adequate explanation as to why [the putative intervenor] is not sufficiently

13

represented by the named party. *B. Fernandez & Hnos., Inc.*, 440 F.3d at 546; *accord United Nuclear Corp.*, 696 F.2d at 144 ("To overcome that presumption, petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance." (quoting *Mooshead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979))). A difference in kind or degree provides sufficient explanation. *B. Fernandez & Hnos., Inc.*, 440 F.3d at 546 (citing *Glancy v. Taubman Cts., Inc.*, 373 F.3d 656, 675 (6th Cir.2004), for the proposition that "[a]symmetry in the intensity . . . of interest can prevent a named party from representing the interests of the absentee"); *United Nuclear Corp.,* 696 F.2d at 144. For example, even a corporate alter-ego's attempt to intervene is not necessarily fatal, since corporate siblings may have different degrees of interest, even while seeking the same ultimate objective. *B. Fernandez & Hnos., Inc.*, 440 F.3d at 546.

The Court finds that, although both Canadian National and Twin Rivers seek the same objective, i.e. reformation of the easement, their respective stakes in the matter differ dramatically. For example, the Court is struck by the disparate worst-case consequences of failure. Should MMA prevail on the merits, and assuming the truth of Twin Rivers' predictions of its own demise, Canadian National would, at most, lose a customer and the rights to the then-worthless track to service that customer. By its own telling, Twin Rivers, in contrast, could cease to exist. Twin Rivers' apocalyptic predictions illustrate the different degrees of interest between Canadian National and Twin Rivers; Canadian National has a financial stake and Twin Rivers has an existential one.

The Court finds that, having satisfied each of the four Rule 24(a) factors, Twin Rivers may intervene in the lawsuit by right.

### C. Intervention by Permission – Rule 24(b)

Rule 24(b)(1)(B)[3] provides:

On timely motion, the court must permit anyone to intervene who:

> (B) has a claim or defense that shares with the main action a common question of law or fact.

The discretion to allow intervention—substantial already—is greatest when the issue is one of intervention by permission. *R & G Mortg. Corp.*, 584 F.3d at 11; *Ruthardt v. United States*, 303 F.3d 375, 386 (1st Cir. 2002) (noting that "[t]he district court could, of course, have permitted permissive intervention but its discretion on that score is great"); *Daggett*, 172 F.3d at 113; *Walgreen Co.*, 194 F.R.D. at 25. In assessing such a request, district courts may, therefore, "consider almost any factor rationally relevant." *Daggett*, 172 F.3d at 113; *Walgreen Co.*, 194 F.R.D. at 25. Among the most important are: (1) whether a named party will adequately represent the intervenor's interests; and (2) whether intervention will either "delay the lawsuit or prejudice the adjudication of the rights of the original parties." *N. Am. Specialty Ins. Co. v. Seacoast Crane Co., Inc.*, 226 F.R.D. 27, 30 (D. Me. 2005); *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992).

The Court is convinced that Twin Rivers' participation as an intervenor in this matter is necessary to represent its distinct interests. *See supra* Part II.B.3. Although MMA's fears that Twin Rivers may obstruct or unduly complicate the

---

[3] The Court does not consider permissive intervention under Rule 24(b)(1)(A) as there is no federal statute at issue that provides "a conditional right to intervene."

15

proceedings, the Court retains the authority to govern the progress of the case and does not expect Twin Rivers' intervention will "impede progress and diffuse the focus in the case." *Def.'s Opp'n* at 10. The Court grants Twin Rivers' motion for permissive intervention.

## III. CONCLUSION

The Court GRANTS Twin Rivers Paper Company, LLC's motion to intervene (Docket # 5).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2010